348    WISCONSIN REPORTS.

The State ex rel. Mayers vs. The School Commissioners.

THE STATE ex rel. CHARLES GEORGE MAYERS

*vs.*

THE SCHOOL COMMISSIONERS.

#### APPLICATION FOR MANDAMUS.

A purchaser of school lands, which he had allowed to become forfeited, by non-payment of subsequent installments of purchase money, has a right to insist that such land shall be re-offered for sale, at public auction, before the same shall be subject to private entry.

The purchaser of school lands, which he has allowed to become forfeited by non-payment of subsequent installments, has a right to revive the original contract of sale, at any time before a re-sale, by paying the sum due, with interest, and all costs occasioned by the delay, together with five per cent. damages.

Section 3, of chapter 43 of Session Laws of 1853, is unconstitutional, so far as it relates to sales of school lands previously made.

THE relation in this case set forth, that the relator, Charles George Mayers was a resident of Madison, in Dane county, in this state, and alleged, that by the laws of the state he was entitled to a patent for a certain tract of land (describing specifically the same), situate, lying and being in the county of La Crosse, and being part of the 500,000 acre tract, reference being had to the certificate of the commissioners, issued to the relator, which certificate was in words and figures following:

> "*School and University Lands Commissioners' Office.*
> "*Madison, January 5th,* 1855.

"No. 213. The sum of $47.35 having been paid to the state treasurer, by Charles George Mayers, being in full payment of the amount due on school land certificate, No. 1025, for the northwest quarter of the northeast quarter of section 5, town 15, range seven west, in the county of La Crosse; and the said certificate having been surrendered, and, with the record thereof, canceled, the said Charles George Mayers is entitled to receive from the governor, a patent for the land called for in said certificate, and above described.    (Signed)  E. H. JANSEN, *State Treasurer.*

"J. W. HUNT, *Assistant Secretary of State.*"

"NOTE.—The patent will be ready for delivery after about three months from above date."

That on or about the 20th day of September, 1855, the duly authorized attorney of the relator called at the office of the commissioners aforesaid, produced the said certificate, and requested them to issue a patent for the lands described therein to the relator, but they then and there refused so to issue the patent, and still do refuse, contrary to law, &c.

And the relation prays, the relator being without other specific and adequate remedy, that a writ of mandamus be awarded and directed to the commissioners aforesaid, commanding them to issue a patent to the relator for the said lands, according to the statute in such case made and provided.

Upon this relation an alternative writ of mandamus was issued, which was duly served and returned; and thereupon the respondents, in answer thereto, returned, in substance, as follows:

That at a public sale of the school lands held in the county of La Crosse, in accordance with the provisions of an act entitled " An act to provide for the appraisal and sale of school lands, and for granting preemptions thereon," approved February 9, 1850, and of an act amendatory thereto, February 4, 1851, Edwin Flint became the purchaser at such sale of certain portions and parcels (whether more or less does not affect the point in judgment, but for such purpose regarded as the same) for $42.07, and the sum of thirty-nine cents, being the interest thereon to the first day of January, 1852, was then and there paid by Flint to the commissioners, and that the commissioners, upon such sale and payment, executed and delivered to the said Flint a duplicate certificate of such sale for the said lands, providing and reciting, among other things, that if the said Edwin Flint, his heirs, assigns, or other legal representatives, should pay to the state treasurer, at his office, the sum of $42.07, being the amount of the purchase money, in one or more installments annually, in advance, on the first day of January in each year, at the rate of seven per cent. per annum, then the said Edwin Flint, his heirs and assigns, were, or his legal representatives would be, entitled to a patent

of said land; but in case of the non-payment to the said state treasurer of the purchase money aforesaid, when it should become due, or the interest thereon, by the first day of January, or within thirty days thereafter, in each and every year, by the said Edwin Flint, or any person claiming under him, the said certificate from the time of such failure should be void, and the said commissioners might take possession of the said land and resell the same; that the said Flint, on the 14th day of April, 1853, assigned and transferred all his right, title and interest to the said duplicate certificate to Samuel T. Smith and Francis M. Rublee; that the interest due on the first day of January, 1854, was not paid, nor within thirty days thereafter, whereby the said duplicate became forfeited; that the commissioners published a notice in a newspaper printed in the county of La Crosse, that the said lands had become forfeited for the non-payment of interest, and that the same was subject to private entry by any person applying for the same; and on the 4th day of October, 1854, the relator entered the same at private entry, and a duplicate certificate was issued to him by the said commissioners; that on the 13th day of February, 1855, by a resolution of the said board of commissioners, it was ordered and directed that all the lands forfeited in the counties of La Crosse and Monroe were sold before due notice and advertisement had been made, and that the certificates issued upon the re-sale thereof should be recalled upon the payment of interest and penalty by the holders of the said certificates; that on the 13th day of February, 1855, the said Samuel T. Smith and Francis M. Rublee, surrendered the duplicate assigned to them by the said Flint, and paid to the state treasurer the full amount of principal and interest, costs, damages and penalties due, or to become due, thereon, and a receipt of such payment was executed to them by the said commissioners, and that the said Samuel T. Smith and Francis M. Rublee were entitled to a patent for the said land.

And the said commissioners aver, that the said land had not been re-offered for sale at public auction, after the same had become forfeited for the non-payment of interest as aforesaid, before the same was entered at private entry by the said relator.

To this return the relator demurred, and there was joinder in demurrer in due form; also, a motion for peremptory writ of mandamus as asked for in the relation.

When the case came on for argument, it was agreed by counsel that the case should be submitted on its merits, upon the two following questions, and the argument thereon, viz :

1. Whether the 3d section of chapter 43 of the Session Laws of 1853 is constitutional, and applies to sales made previous to its taking effect; and,

2. Whether the defendants are not estopped by their acts from setting up, as between themselves and the relator, any illegality in their proceedings in bar of the relator's rights in the premises; they being as familiar with all the facts as the relator himself.

Section 3 of the Session Laws of 1843, is in the following words:

" It shall be the duty of the said commissioners, whenever any of the school or university lands shall have been forfeited for the space of six months, by reason of the non-payment of principal or interest, to advertise, in some newspaper published in the county wherein such lands lie, if there be one, and if not, in such newspaper as they think proper, that such forfeited lands are subject to private entry by any person applying therefor, and the minimum price for such tracts or parcels of land so forfeited shall be the amount due thereon at the time of such resale, together with the costs of sale."

*H. E. Frink*, for the relator, in regard to the first question, insisted that the act of 1853 was constitutional; that it did not impair the obligation of the contracts entered into by the state; and that it applied to all sales of school and university lands made and forfeited previous to the passage of the act.

And in regard to the second point, he contended that the commissioners were estopped from setting up, as between themselves and the relator, any irregularity in their proceedings. By the certificate, they admit the sale to have been in conformity with law, &c., and they are estopped to say the contrary.  4

*Kent*, 260; *Jackson vs. Parkhurst*, 9 *Wend.* 208; 10 *Mass.* 165; 4 *Bin.* 231; *id.* 314.

*William R. Smith*, attorney-general, for the respondents.

By the Court, COLE, J.   In the case of *The State ex rel. Dammon vs. The Commissioners of School and University Lands* (4 *Wis. Rep.* 414), this court held that a purchaser of school or university lands, under chapter 24 of the Revised Statutes (which had become forfeited for the non-payment of either principal or interest), had a right, by section sixteen of said chapter, at any time before a re-sale of such lands, by paying the sum due with interest, and all costs occasioned by the delay, together with five per cent. damages on the whole sum owing therefor, to revive the original contract and prevent such re-sale; and further, that when such purchaser did not choose to revive the original contract by the payment of the sums specified in section sixteen, and prevent a re-sale of such land, by section seventeen of the same chapter it is provided, that on a re-sale, if the land should produce more than sufficient to pay the sum due the state, with interest and costs, and five per cent. damages on the amount of the purchase money unpaid, that the residue, when collected, should be paid over to such purchaser, and that he had a direct interest in such surplus which could not be taken away or destroyed, and of which he could not be deprived by any subsequent legislation; and that by reason of his direct interest in such proceeds, he had a right to insist that the forfeited land should be re-offered for sale at public auction, according to section twenty-seven, before it could be subject to private sale.

The principle decided in that case is distinctly against the case of the relator as presented by the pleadings, and fully disposes of it.   We do not deem it necessary to go on and re-argue the soundness of the doctrine in the Dammon case.   The statute is so clear and explicit in its terms, and as to the rights of the purchasers, that it seems to be a waste of words to make any ob-

servations in support of the principle there established. The statute says the surplus proceeds, after paying the state, shall go to the purchaser, and that the land should not be subject to private sale until it had been re-offered at public auction. Of course we are now considering a sale under the Revised Statutes. And why should the purchaser thus interested in the surplus moneys have a right to insist that the land should be re-offered at public auction? Manifestly, so as to give him the advantage of competition, and that the land might be sold for the highest and best price. Competition at the public sale would proportionally increase the surplus coming to him. Therefore, he had a right to claim from the state an observance of this condition of the contract.

The demurrer of the relator to the return of the commissioner is overruled, and peremptory mandamus denied.